US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS**

JUN 1 2 2015

CHRIS R. JOHNSON, Clerk

By

Deputy Clerk

| | |
|---|---|
| JACQUELINE MILLS JACOBS,<br>GREGORY WILLIAM JACOBS and<br>ARRON JACOBS<br>individually and on behalf of<br>all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>GLOBAL TEL\*LINK CORPORATION<br><br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 15-5136 TLB

**CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED**

## COMPLAINT

1.     Plaintiffs, individually and on behalf of all others similarly situated, bring this class action on behalf of a nationwide class asserting claims under the Federal Communications Act, 47 U.S.C. §§ 201, 206, 207 and 276, *et seq.*, (the "FCA") and the common law of unjust enrichment, and a state subclass asserting claims under the Arkansas Deceptive Trade Practices Act, A.C.A. §4-88-101 ET. SEQ. (the "A.D.T.P.A.") seeking restitution, costs of suit and other relief, against Defendant Global Tel\*Link Corporation ("GTL") for its unjust, unreasonable and unfair conduct from February 16, 2000, through the present (the "Class Period").  Specifically, during the Class Period, Defendant charged exorbitant rates and fees – up to 100 times normal market rates – for inmates' *intrastate* telephone calls pursuant to exclusive contracts pertaining to correctional facilities throughout the United States.

2.     The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## PARTIES

3.      Plaintiffs Jacqueline Mills Jacobs and Gregory William Jacobs are citizens of Texas who have a family member who was incarcerated in Miller County Arkansas Department of Corrections ("ADC") and the Department of Community Corrections ("DCC") facilities in Arkansas, for various periods of time between April 2010 and November 2014. They were forced to pay Defendant GTL unjust, unreasonable, unfair and deceptive amounts for intrastate phone calls within Arkansas.  Plaintiffs Jacqueline Mills Jacobs and Gregory William Jacobs are willing and able to serve as class representatives.

4.      Plaintiff Arron Jacobs is a citizen of Arkansas and was incarcerated in Miller County ADC and DCC correctional facilities in Arkansas, for various periods of time between April 2010 and November 2014. He was forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls within Arkansas.  Plaintiff Arron Jacobs is willing and able to serve as a class representative.

5.      Defendant GTL operates through wholly-owned subsidiaries to provide inmate telephone services throughout the United States. Operating subsidiaries of GTL during the Class Period include, among others: Inmate Telephone Services ("ITS"), a Delaware corporation headquartered in Mobile, Alabama; DSI-ITI, LLC ("DSI-ITI"), a Delaware limited liability company headquartered in Altoona, Pennsylvania and the successor-in-interest to ITS's contracts as of June 20, 2010; Value-Added Communications, Inc. ("VAC"), a Delaware corporation headquartered in Plano, Texas; and Public Communications Services, Inc. ("PCS"), a California corporation headquartered in Los Angeles, California.

6.      GTL and its subsidiaries serve and have served over 2,200 correctional facilities and 1.1 million inmates in forty-eight states. GTL and its subsidiaries provide and have provided

inmate telephone services pursuant to contracts with twenty-nine states (including in Arkansas with the ADC since February 15, 2007) and contracts with over 800 counties.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this matter involves a federal question, *i.e.,* whether GTL violated 47 U.S.C. §§ 201 and 276, *et seq.* The Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try both state claims and the claim involving a federal question in one judicial proceeding.

8.     Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one Class Member is a citizen of a state other than that of Defendant.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that Defendant transacts substantial business and is subject to personal jurisdiction within this District and thus "resides" in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted herein took place in this District.

## DEFENDANT'S UNLAWFUL CONDUCT

10.     Inmates are literally a captive market for GTL, which provides pay telephone services in prisons, jails, and other correctional facilities. As noted by the FCC, there are no competitive market forces to constrain the prices set by GTL.[1]

---

[1] *See In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept. 26, 2013) ("*Interstate Inmate Calling Servs. I*").

11.    Defendant GTL has secured for itself the right to provide intrastate telephone services to hundreds of thousands of inmates through exclusive contracts with thousands of correctional facilities. As a result of the monopolies created by these exclusive contracts, GTL faces little or no competition to challenge increasing intrastate telephone rates.[2]

12.    In return for this monopoly power, GTL provides kickbacks, masqueraded as "site commissions," to the contracting parties and/or facilities, including a 45% commission paid under the contract covering Arkansas facilities during the Class Period.  As a result of the absence of competition, "[f]amilies of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for their basic monthly phone service."[3]

13.    GTL charges vastly more than market rates[4] for inmates' intrastate calls within the United States, not including exorbitant, unreasonable, unjust, unfair and deceptive per call connection and other fees.

14.    Upon information and belief, GTL purchases minutes for calls terminating within the United States from connection carriers for less than a penny per minute.  Yet, GTL resells these minutes for up to 100 times more than their cost to Plaintiffs and the Class.

15.    Payment of kickbacks by inmate telephone service providers is substantial, with reports estimating that kickbacks paid to correctional facilities exceed $124 million per year.[5]

---

[2] *See* FCC Opp. p.3 (stating that "each provider is a monopoly in a given facility").

[3] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14130.

[4] *See* John E. Dannenberg and Alex Friedmann, *FCC Order Heralds Hope For Reform of Prison Phone Industry,* Chart B- Intrastate ICS Rates, InterLATA Rates (2012-2013), Prison Legal News, Vol. 24, No 12 (December 2013), www.prisonlegalnews.org/media/issues/12pln13.pdf (last visited June 12, 2015).

16.     In addition, Defendant GTL imposes unnecessary, unfair and unconscionable fees on accounts used for inmate telephone calls.  Reasonable discovery will show that Defendant GTL refused to refund amounts not expended on telephone calls, and imposed myriad fees and charges that lacked any reasonable relationship to GTL's costs.

17.     During rulemaking proceedings governing interstate charges, the Federal Communications Commission (the "FCC") looked at whether interstate charges were "unreasonably high, unfair, and far in excess of the cost of providing service."[6]  The FCC concluded that they were, and that GTL and similar companies "exploited [their] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of Sections 201 and 276 of the [FCA] that those rates be just, reasonable, and fair."[7]  Likewise the FCC has concluded that "[they] believe the same legal and policy concerns identified in the Order apply equally with regard to high *intrastate* rates."[8]

18.     More particularly, during rulemaking proceedings regarding the rates and fees charged to inmates, the FCC concluded that:

- Under existing law, commission payments to correctional facilities are profitsharing kickback arrangements and "are not a . . . category of . . . costs" recoverable from end-users in the rates charged for interstate telephone calls. *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14135-37.

---

[5] *FCC Order Heralds Hope for Reform of Prison Phone Industry, supra*. note 4, at Chart D.

[6] *In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 15927, 15929 (F.C.C. Nov. 21, 2013) ("*Interstate Inmate Calling Servs. II*").

[7] FCC Opp., at p. 1.

[8] *Interstate Inmate Calling Servs. I,* 28 FCC Rcd. at 14174 (emphasis added).

- Because correctional facilities grant the monopoly franchise partly on the basis of the commission payment offered, "competition" among providers produces increased commission payments and higher end-user charges. *See Id.* at 14129.

- As a result, inmate telephone rates have "inflict[ed] substantial and clear harm on the general public (and not merely on private interests)" and must be rejected under existing legal precedent. *Interstate Inmate Calling Servs. II,* 28 FCC Rcd. At 15938.

- With regard to certain per call charges, "[t]he record indicates that these per call charges are often extremely high and therefore, unjust, unreasonable and unfair for a number of reasons." *Interstate Inmate Calling Servs. I,* 28 FCC Rcd. At 14154- 55.

- Thus, "for many years, interstate [inmate telephone service] rates have been unreasonably high, unfair, and far in excess of the cost of providing service." *Interstate Inmate Calling Servs. II,* 28 FCC Rcd. at 15929-30 (emphasis added).

19.     As specifically relates to *intrastate* rates, the FCC has stated that:

- "[W]e conclude that competition and market forces have failed to ensure just, reasonable, and fair interstate ICS rates, and, for the same reasons, we tentatively conclude that the same failure has occurred for intrastate ICS rates as well." Interstate Inmate Calling Servs. I, 28 FCC Rcd. at 14174- 75.

- "For the same reasons we found that site commission payments are not part of the cost of providing interstate ICS, we tentatively conclude that site commissions should not be recoverable through intrastate rates[.]" Interstate Inmate Calling Servs. I, 28 FCC Rcd. at 14175.

20.     As demonstrated above, the FCC has unequivocally determined that interstate ICS providers have, for many years, violated the FCA by incorporating commission payments and other unjust and unreasonable fees and costs into their charges for interstate calls.  As the ICS Orders reflects, the same analysis applies to the cost structure utilized for intrastate calls.[9]

21.     Although the FCC has not yet issued final rulemaking governing intrastate calls, as made clear by the FCC, the same reasoning and expertise as was applied by the FCC to

---

[9] *Interstate Inmate Calling Servs. I,* 28 FCC Rcd. at 14173-78.

interstate calls applies to intrastate calls as Defendant incorporated the kickbacks into their cost structures for intrastate charges in the same fashion as the interstate calls.[10]

22.    Beginning by at least 1998, GTL has known that it was unlawful to charge intrastate rates that violated Sections 201 and 276 of the FCA. In 1998, the FCC determined that inmate telephone service rates "must conform to the just and reasonable requirements of Section 201."[11]

23.    Accordingly, the FCC's September 2013 and November 2013 orders do not place a new obligation on GTL; rather, they simply confirm Defendant's longstanding legal obligations – obligations they violated throughout the Class Period.

24.    As a result of GTL's imposition of exorbitant, unfair, unjust and unreasonable intrastate charges for inmate telephone services during the Class Period, Plaintiffs and members of the Class have been damaged.

## TOLLING

25.    On February 16, 2000, a class action complaint was brought against several inmate telephone service providers alleging violations of the FCA based on some of the conduct alleged herein.[12]  Additionally, current and former inmates petitioned the FCC as early as 2003 to address inmate telephone rates.

---

[10] *FCC Order Heralds Hope for Reform of Prison Phone Industry, supra.* note 4.

[11] *See Billed Party Preference For Interlata 0+ Calls*, 13 FCC Rcd. 6122, 6156 (FCC Jan. 29, 1998) (finding that inmate telephone rates "must conform to the just and reasonable requirements of Section 201").

[12] *See Wright v. Corrections Corporation of America, et al.*, No. 00-cv-0293-GK (D.D.C.).

26.     The court in *Wright* stayed the action on the basis of "primary jurisdiction" and deferred judgment to the FCC, effectively putting such claims on hold pending FCC review and determination.[13]

27.     As noted by U.S. District Judge Gladys Kessler in 2001, "the Court expects the [FCC] to move with dispatch to conclude its ongoing proceedings so as to provide both courts and parties with meaningful analysis and guidance on these issues."[14]

28.     As alleged herein, the FCC has finally and conclusively determined that charges for ICS incorporating commissions and other unjustified amounts unrelated to costs were unjust and unreasonable in violation of the FCA – the "analysis and guidance" referenced by Judge Kessler.

29.     As noted above, a finding of liability in this action would not be a "retroactive application" of a new law or regulation because the FCC has merely clarified existing law in its recent findings that ICS providers have violated the FCA.

---

[13] *See, e.g., Wright*, No. 00-cv-0293-GK, Dkt. No. 94 (D.D.C. Aug. 22, 2001)(concluding "the FCC is clearly in the best position to resolve the core issues in this case, namely the reasonableness of the rates charged" and noting that "[a]fter the FCC does so ... the Court will have the benefit of the agency's expert findings in addressing them"). The district court initially entered the order as a dismissal and "directed [the parties] to file the appropriate pleadings with the FCC to ensure that the issues raised in this lawsuit are presented to the FCC." *Wright*, No. 00-cv-293, Doc. Entry 95 (Aug, 22, 2001). However, on November 5, 2001, the district court granted the *Wright* "Plaintiffs' Motion to Reconsider and ordered that [*Wright*] be stayed, instead of dismissed, pending the proceedings before the FCC." *Wright*, No. 00-cv-293, Doc. Entry 127 (Oct. 8, 2003) Doc. Entry 105.   Accordingly, the case was reopened and then stayed on November 5, 2001.  *Wright*, No. 00-cv-293, Docket Report.  Thereafter, during the stay in *Wright*, and after the petition had been filed with the FCC, GTL (therein identified as "Global Telecommunications Link") filed a motion to dismiss the claims against it for lack of personal jurisdiction. *See Wright*, ECF No. 134. Adhering to the stay, the Wright Plaintiffs did not file an opposition to such motion. Nonetheless, GTL's motion was granted without opinion on July 7, 2004.

[14] *Id.*

30.     GTL has thus been on notice since as early as 2000 that its conduct likely violated the FCA and the claims alleged herein are ripe for disposition.

## CLASS ALLEGATIONS

31.     Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to FED. R. CIV. P. 23. Plaintiffs seek to represent a class, defined as follows:

> all persons in the United States who, at any time since February 16, 2000, have paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in any state in the United States (the "Class").

32.     Excluded from the Class are any persons who paid to use telephone services provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls in the State of New Jersey.[15]

33.     In addition, Plaintiffs seek to represent an Arkansas subclass defined as follows:

> all persons who, at any time since February 15, 2007, have paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in Arkansas (the "Arkansas Subclass").

34.     This action is brought and properly may be maintained as a class action pursuant to the provisions of FED. R. CIV. P. 23(a)(l)-(4) and 23(b)(l), (b)(2), or (b)(3) and satisfies the requirements thereof.

35.     The members of the Class and Subclass are so numerous that individual joinder of all the members is impracticable. On information and belief, there are many thousands of persons

---

[15] Claims on behalf of a class of individuals concerning calls with inmates in the State of New Jersey are currently pending against GTL and certain of its subsidiaries in existing litigation in the District of New Jersey. *See James v. Global Tel\* Link, et al.*, No. 13-cv-4989 (D.N.J.).

who have been affected by Defendant's conduct.  The precise number of Class and Subclass Members are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class and Subclass Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

36.     Common questions of law and fact exist as to the Class and Subclass, as required by FED. R. CIV. P. 23(a)(2), and predominate over any questions that affect only individual Class Members within the meaning of FED. R. CIV. P. 23(b)(3). The common questions of law and fact include, but are not limited to, the following:

a.     whether Defendant has charged unreasonable and unjust intrastate telephone rates and fees;

b.     whether Defendant has charged telephone rates and fees that greatly exceed costs of providing instrastate service;

c.     whether, through the acts and practices complained of herein, Defendant has violated §201(b)  and 276 of the FCA and regulations thereunder;

d.     whether, through the acts and practices complained of herein, Defendant was unjustly enriched;

e.     whether through the acts and practices complained of herein, Defendant has knowingly taken advantage of Subclass members in violation of A.D.T.P.A. §4-88-107(a)(8);

f.     whether, through the acts and practices complained of herein, Defendant has engaged in unconscionable, false, or deceptive act or practices in violation of A.D.T.P.A. §4-88-107(a)(10); and

g.     whether Plaintiffs and the Class and Subclass have been damaged by Defendant's acts and practices complained of herein, and if so, the measure of those damages and the nature and extent of any other relief that should be granted.

37.     Plaintiffs' claims are typical of the claims of the Class and Subclass they seek to represent under FED. R. CIV. P. 23(a)(3) because Plaintiffs and the members of Class and

Subclass have been subjected to the same wrongful practices and have been damaged thereby in the same manner.

38.     Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass as required by FED. R. CIV. P. 23(a)(4).  Plaintiffs are adequate representatives of the Class and Subclass because they have no interests that are adverse to the interests of the Class and/or Subclass. Plaintiffs are committed to the vigorous prosecution of this action and to that end Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

39.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and each Class and Subclass Member are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for each Class and/or Subclass Member to individually seek redress for Defendant's wrongful conduct. Even if Class and Subclass Members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

40.     In the alternative, this action is certifiable under the provisions of FED. R. CIV. P. 23(b)(1) because:

    a.    the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant; and

b.    the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interests of the other Class and Subclass Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

41.    In the alternative, this action is certifiable under the provisions of FED. R. CIV. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and Subclass as a whole and necessitating that any such relief be extended to Class and Subclass Members on a mandatory, class wide basis.

42.    Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class action.

## COUNT I
### VIOLATION OF THE FEDERAL COMMUNICATIONS ACT, 47 U.S.C. § 201 AND § 276, ET SEQ. (ON BEHALF OF A NATIONWIDE CLASS)

43.    Plaintiffs hereby incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

44.    Under § 201(a) and § 276 of the FCA, Defendant is a common carrier engaged in interstate and intrastate wire communications for the purpose of furnishing such communication services.

45.    Defendant's conduct and the intrastate telephone rates and fees charged by Defendant, as alleged above, are unjust and unreasonable, and thus, violate § 201 (b) and § 276 of the FCA.

46.    As a direct and proximate result of Defendant's violations of the FCA, Plaintiffs and the Class have been damaged in amounts to be determined at trial.

## COUNT II
## UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE CLASS)

47.     Plaintiffs hereby incorporate by reference paragraphs 1- 42 of this Complaint as if fully set forth herein.

48.     Defendant's conduct as described herein also constitutes Unjust Enrichment, for which Plaintiffs and Class Members are entitled to pursue equitable remedies under the common law.

49.     As a direct and proximate result of Defendant's acts and practices alleged herein, Defendant has been unjustly enriched and has obtained money, earnings, profits, and benefits directly from Plaintiffs and the Class to which Defendant is not otherwise entitled and which it would not have obtained but for unreasonably charging Plaintiffs and Class Members amounts to cover kickbacks and other exorbitant and/or undisclosed fees and charges in order to reap unjust profits.

50.     Defendant's practices were intentional, knowing, malicious, and/or done with the intent to reap significant benefits at the expense of Plaintiffs and the Class. Defendant is not entitled to this enrichment, was prohibited from engaging in the acts and practices that generated this enrichment by § 201(b) of the FCA, and obtained this enrichment to the detriment of Plaintiffs and the Class.

51.     Plaintiffs and the Class reasonably expected that they would only have to pay just and reasonable rates for intrastate calls and would not have to incur other charges that provide no commensurate benefit to them.

52.     Plaintiffs and the Class have suffered, and will continue to suffer, damages as a result of Defendant's unjust retention of proceeds from their acts and practices alleged herein and

are entitled to pursue civil claims for restitution of the amounts charged to unjustly enrich Defendant as alleged above.

53.     Under principles of equity and justice, Defendant should be required to restore the above-described unjust enrichment to Plaintiffs and the Class in amounts to be determined at trial.

### COUNT III
### VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, A.D.T.P.A. §4-88-101 ET. SEQ. (ON BEHALF OF THE ARKANSAS SUBCLASS)

54.     Plaintiffs hereby incorporate by reference paragraphs 1-42 of this Complaint as if fully set forth herein.

55.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Arkansas Subclass against Defendant GTL.

56.     Defendant's actions described in this complaint violate the Arkansas Deceptive Trade Practices Act, A.D.T.P.A. §4-88-101 *et seq.*

57.     Defendant violated Section 4-88-107(a)(8) of the Arkansas Deceptive Trade Practices Act which prohibits "[k]nowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of: (A)  Physical Infirmity; (B) Ignorance; (C) Illiteracy; (D) Inability to understand the language of the agreement; or  (E) A similar factor." Defendant knowingly took advantage of Plaintiffs and Class Members who were unable to protect their interest because (as known to Defendant) Plaintiffs and Class Members were a captive market for GTL's services and had no ability to choose a provider who did not pay kickbacks and charge unconscionable fees when making or receiving a call involving an incarcerated person.  As a direct result of Defendant's violation of the Deceptive Trade Practices

14

Act, Plaintiffs and Class Members have suffered damages, including being forced to fund the kickback payments and charged unconscionable fees.

58.     Defendant violated Section 4-88-107(a)(10) which prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Under the circumstances presented by this case, Defendant engaged in an "unconscionable, false, or deceptive act" by including amounts to fund kickbacks and for exploitive, improper and/or undisclosed fees and charges in the amounts collected from Plaintiffs and the Arkansas Subclass Members for intrastate phone services. As a direct result of Defendant's violation of the Deceptive Trade Practices Act, Plaintiffs and the Arkansas Subclass Members have suffered damage as a result of unwittingly being charged to fund the secret kickback payments and pay for exploitive fees and charges.

59.     Plaintiffs and the Arkansas Subclass Members are entitled to pursue civil claims for relief or recover compensation for their damages in the amount of the unjust and unreasonable charges imposed as a result of the kickbacks and undisclosed, exploitive and/or improper fees and charges as alleged above, and for the costs and reasonable attorney fees incurred with regard to bringing this action pursuant to A.D.T.P.A. § 4-88-113(f).

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant and in favor of Plaintiffs, the Class and Subclass, and award the following relief:

a.     Certification of this action as a class action pursuant to FED. R. CIV. P. 23(b)(l), (b)(2), or (b)(3) on behalf of the Class and Arkansas Subclass as defined above;

b.     Declaration, judgment, and decree that the conduct alleged herein:

- Constitutes an unreasonable and unlawful act in violation of the FCA;
- Unjustly enriched Defendant; and
- Violates the Arkansas Deceptive Practices Act, A.C.A. §4-88-101 *et. seq*;

c.     Damages to Plaintiffs and the Class, and Subclass to the maximum extent allowed under state and federal law;

d.     Costs and disbursements of the action;

e.     Restitution and/or disgorgement of Defendant's ill-gotten gains;

f.     Pre- and post-judgment interest;

g.     Reasonable attorneys' fees; and

h.     Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable.

Date: June 12, 2015                          Respectfully Submitted,

**EVERETT WALES & COMSTOCK**

*Amy C. Martin*

Amy C. Martin
1944 East Joyce Boulevard
P.O. Box 8370
Fayetteville, AR 72703
Telephone: (479) 443-0292
Facsimile: (479) 443-0564
Email: amy@everettfirm.com

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
Peter A. Muhic (*Pro Hac Vice* pending)
Edward W. Ciolko (*Pro Hac Vice* pending)
Donna Siegel Moffa (*Pro Hac Vice* pending)
Monique Galloway (*Pro Hac Vice* pending)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: pmuhic@ktmc.com
Email: eciolko@ktmc.com
Email: dmoffa@ktmc.com
Email: mgalloway@ktmc.com
*Attorneys for Plaintiffs*