US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 2 8 2015

CHRIS R. JOHNSON, Clerk
By _____
Deputy Clerk

## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| JACQUELINE MILLS JACOBS, GREGORY WILLIAM JACOBS, SHONDRA CALDWELL, and LARRY FOSTER *individually and on behalf of all others similarly situated,* | Civil Action No. 5:15-cv-05136 TLB |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GLOBAL TEL*LINK CORPORATION | |
| Defendant. | |

## INTRODUCTION

1.      Plaintiffs Jacqueline Mills Jacobs, Gregory William Jacobs, Shondra Caldwell, and Larry Foster (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action on behalf of a nationwide class asserting claims under the Federal Communications Act, 47 U.S.C. §§ 201, 206, 207 and 276, *et seq.*, (the "FCA") and the common law of unjust enrichment, and  state subclasses asserting claims under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.* ("ADTPA") and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), seeking restitution, costs of suit and other relief, against Defendant Global Tel*Link Corporation ("GTL") for its unjust, unreasonable and unfair conduct from February 16, 2000 through the present (the "Class Period").  Specifically, during the Class Period, Defendant charged exorbitant rates and fees – up to 100 times normal market rates – for inmates' ***intrastate*** telephone calls pursuant to exclusive contracts with correctional facilities throughout the United States.

2.     The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## PARTIES

3.     Plaintiffs Jacqueline Mills Jacobs and Gregory William Jacobs ("Jacobs Plaintiffs") are citizens of Texas who have a family member who was incarcerated in several Arkansas Department of Corrections ("ADC") facilities including:   (1) Central Arkansas Community Corrections Center – Little Rock; (2) Southwest Arkansas Community Corrections Center – Texarkana; (3) Arkansas Department of Corrections Delta Regional Unit; and (4) Omega Technical Violator Center – Malvern, Arkansas, for various periods of time between 2011 and 2014.   They were forced to pay Defendant GTL unjust, unreasonable, unfair and deceptive amounts for intrastate phone calls within Arkansas.   The Jacobs Plaintiffs are willing and able to serve as class representatives.

4.     Plaintiff Shondra Caldwell is a citizen of California who has a family member who has been incarcerated in Los Angeles County Jail since January 2014, and who was previously incarcerated in California State Prison, Corcoran and California State Prison, Centinela.   Plaintiff Caldwell was forced to pay Defendant GTL unjust, unreasonable, unfair and deceptive amounts for intrastate phone calls within California.   Plaintiff Caldwell is willing and able to serve as a class representative.

5.     Plaintiff Larry Foster is a citizen of California who has been incarcerated in Center County Jail, Yuba City since April 2015.   He was previously incarcerated in Deuel Vocational Institute, Tracy, California and California Correctional Center, Susanville, California. Plaintiff Foster was forced to pay Defendant GTL unjust, unreasonable, unfair and deceptive

amounts for intrastate phone calls within California.  Plaintiff Foster is willing and able to serve as a class representative.

6.      Defendant GTL operates through wholly-owned subsidiaries to provide inmate telephone services throughout the United States.  Operating subsidiaries of GTL during the Class Period include, among others: Inmate Telephone Services ("ITS"), a Delaware corporation headquartered in Mobile, Alabama; DSI-ITI, LLC ("DSI-ITI"), a Delaware limited liability company headquartered in Altoona, Pennsylvania and the successor-in-interest to ITS's contracts as of June 20, 2010; Value-Added Communications, Inc. ("VAC"), a Delaware corporation headquartered in Plano, Texas; and Public Communications Services, Inc. ("PCS"), a California corporation headquartered in Los Angeles, California.

7.      GTL and its subsidiaries serve and/or have served over 2,200 correctional facilities in forty-eight states.  GTL and its subsidiaries provide and have provided inmate calling services ("ICS") pursuant to contracts with twenty-nine states (including, in Arkansas, a contract with the ADC dated February 15, 2007 continuing through July 14, 2015 and contracts with the state of California for the inmate telephone services from, at least, 2007 and continuing to the present, as well as contracts with several county and local correctional facilities located in California during the Class period) and contracts with over 800 counties across the United States.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this matter involves a federal question, *i.e.,* whether GTL violated 47 U.S.C. §§ 201 and 276, *et seq.* The Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try both state claims and the claim involving a federal question in one judicial proceeding.

9.      Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one Class Member is a citizen of a state other than that of Defendant.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that Defendant transacts substantial business and is subject to personal jurisdiction within this District and thus "resides" in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted herein took place in this District.

## DEFENDANT'S UNLAWFUL CONDUCT

11.     Inmates are literally a captive market for GTL, which provides pay telephone services in prisons, jails, and other correctional facilities. As noted by the FCC, there are no competitive market forces to constrain the prices set by GTL.[1]

12.     Defendant GTL has secured for itself the right to provide intrastate telephone services to hundreds of thousands of inmates through exclusive contracts with thousands of correctional facilities. As a result of the monopolies created by these exclusive contracts, GTL faces little or no competition to challenge increasing intrastate telephone rates.[2]

13.     In return for this monopoly power, GTL provides kickbacks, masqueraded as "site commissions," concession fees, administration fees and other payments to the contracting parties and/or facilities, including, for example, a 45% commission paid under the contract covering ADC facilities during the Class Period, and contracts with the State of California pursuant to

---

[1] *See In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept. 26, 2013) ("*Interstate Inmate Calling Servs. I*").

[2] *See* FCC Opp. p.3 (stating that "each provider is a monopoly in a given facility").

which GTL paid over 97 million dollars in concession fees to California from 2005 — 2011 in connection with its provision of ICS to state run correctional facilities.[3] GTL pays concession fees to many state and county run correctional facilities. GTL pledged to pay a minimum of 15 million dollars a year to the Los Angeles County Sheriff's Department.[4] As a result of the absence of competition, "[f]amilies of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for their basic monthly phone service."[5]

      14.    GTL charges vastly more than market rates[6] for inmates' intrastate calls within the United States, as well as exorbitant, unreasonable, unjust, unfair and deceptive per call connection fees and other Ancillary Charges.[7]

      15.    Payments of kickbacks, in the form of site commissions, concession fees, administrative fees and other payments made by inmate telephone service providers to

---

[3] https://www.prisonphonejustice.org/media/phonejustice/CA_prison_phone_concession_fees_20052011.pdf

[4] http://www.latimes.com/business/la-fi-lazarus-20140909-column.html.

[5] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14130.

[6] *See* John E. Dannenberg and Alex Friedmann, *FCC Order Heralds Hope For Reform of Prison Phone Industry*, Chart B- Intrastate ICS Rates, InterLATA Rates (2012-2013), Prison Legal News, Vol. 24, No 12 (December 2013),

www.prisonlegalnews.org/media/issues/12pln13.pdf (last visited June 12, 2015).

[7] The FCC defines "Ancillary Charges" as "fees charged to ICS end users [(anyone who pays for and uses inmate calling services)] such as, but not limited to, a charge for the establishment of debit and prepaid accounts for inmates in facilities served by the ICS provider or those inmates' called parties; a charge to add money to those established debit or prepaid accounts; a charge to close debit or prepaid accounts and refund any outstanding balance; a charge to send paper statements to ICS end users; a charge to send calls to wireless numbers; fees characterized as "regulatory recovery fees," penalty charges assessed on the account for perceived three-way calling or other perceived violations of the security provisions mandated by the correctional facility; and other charges ancillary to the provision of communication services." *See* https://apps.fcc.gov/edocs_public/attachmatch/DOC-327664A1.pdf (last visited Aug. 24, 2015); *see also* 47 C.F.R. § 64.6000 (defining "Ancillary Charges").

correctional facilities amount to hundreds of millions of dollars every year. In GTL's August 22, 2014 Response to the FCC One-Time Mandatory Data Collection Order, [8] GTL reported paying commissions exceeding 700 million dollars for the years 2012-2014, including a significant proportion paid in connection with intrastate calls.[9]

16.    In addition, GTL imposes unnecessary, unfair and unconscionable Ancillary Charges that lack any reasonable relationship to GTL's intrastate calling costs.[10]

17.    During rulemaking proceedings governing interstate charges, the Federal Communications Commission (the "FCC") investigated whether interstate charges were "unreasonably high, unfair, and far in excess of the cost of providing service."[11]  The FCC concluded that they were, and that GTL and similar companies "exploited [their] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of Sections 201 and 276 of the [FCA] that those rates be just, reasonable, and fair."[12]  Likewise, the FCC has concluded that "[it] believe[s] the same legal and policy concerns identified in the Order apply equally with regard to high *intrastate* rates."[13]

18.    More particularly, during rulemaking proceedings regarding the rates and fees associated with ICS, the FCC concluded that:

---

[8] *See* WC Docket No. 12-375, Global Tel*Link Corporation Response to One-Time Mandatory Data Collection Order, August 22, 2014 (Redacted – For Public Inspection) attached as Exhibit 1, also available at:  http://apps.fcc.gov/ecfs/document/view?id=7521805461.

[9] GTL reported the 2014 data on an annualized basis.  *Id.*

[10] *See, e.g., id.* at 13-15.

[11] *In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 15927, 15929 (F.C.C. Nov. 21, 2013) ("*Interstate Inmate Calling Servs. II*").

[12] FCC Opp., at p. 1.

[13] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14174 (emphasis added).

- Under existing law, commission payments to correctional facilities are profitsharing kickback arrangements and "are not a . . . category of . . . costs" recoverable from end-users in the rates charged for interstate telephone calls. *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14135-37.

- Because correctional facilities grant the monopoly franchise partly on the basis of the commission payment offered, "competition" among providers produces increased commission payments and higher end-user charges. *See Id.* at 14129.

- As a result, inmate telephone rates have "inflict[ed] substantial and clear harm on the general public (and not merely on private interests)" and must be rejected under existing legal precedent. *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. At 15938.

- With regard to certain per call charges, "[t]he record indicates that these per call charges are often extremely high and therefore, unjust, unreasonable and unfair for a number of reasons." *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. At 14154- 55.

- Thus, "for many years, interstate [inmate telephone service] rates have been unreasonably high, unfair, and far in excess of the cost of providing service." *Interstate Inmate Calling Servs. II,* 28 FCC Rcd. at 15929-30 (emphasis added).

19.     Specifically in regard to ***intrastate*** rates, the FCC has stated that:

- "[W]e conclude that competition and market forces have failed to ensure just, reasonable, and fair interstate ICS rates, and, for the same reasons, we tentatively conclude that the same failure has occurred for intrastate ICS rates as well." *Interstate Inmate Calling Servs.* I, 28 FCC Rcd. at 14174-75.

- "For the same reasons we found that site commission payments are not part of the cost  of providing interstate ICS, we tentatively conclude that site commissions should not be recoverable through intrastate rates[.]" Interstate Inmate Calling Servs. I, 28 FCC Rcd. at 14175.

20.     In reference to the many Ancillary Charges and fees assessed by GTL and other inmate calling service providers, the FCC has expressed its concern that the assessment of

Ancillary Charges "are not reasonably related to the cost of providing service."[14]  The FCC noted that the charges for services ancillary to the provision of ICS result in "significant additional burdens on consumers and considerably inflate the effective price they pay for ICS,"[15] concluding that "[t]here is broad consensus in the record on the need for the Commission to reform ancillary charges."[16]

21.     As demonstrated above, the FCC has unequivocally determined that interstate ICS providers have, for many years, violated the FCA by incorporating commission payments by ICS providers to correctional facilities and other unjust and unreasonable fees and costs into their charges for interstate calls.  As the ICS Orders reflect, the same violative behavior and findings apply to intrastate calls.[17]

22.     On June 16, 2014, the FCC implemented a Mandatory Data Collection to inform its evaluation of the cost of inmate calling services and reform options under the FCA, and required all ICS providers to file data regarding their costs to provide inmate calling services pursuant to the *Rates for Interstate Inmate Calling Services Report and Order and Further Notice of Proposed Rulemaking*, including information on the Ancillary Charges and fees imposed on ICS end users.

23.     Beginning by at least 1998, GTL has known that it was unlawful to charge intrastate rates that violated Sections 201 and 276 of the FCA.  In 1998, the FCC determined that

---

[14] *Interstate Inmate Calling Servs. II.*, 29 F.C.C. Rcd. 13170, 13173 (2014).

[15] *Id.* at 13202.

[16] *Id.* at 13203

[17] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14173-78.

inmate telephone service rates "must conform to the just and reasonable requirements of Section 201."[18]

24.     Accordingly, the FCC's September 2013 and November 2013 orders do not place a new obligation on GTL; rather, they simply confirm Defendant's longstanding legal obligations – obligations they violated throughout the Class Period.

25.     As a result of GTL's imposition of exorbitant, unfair, unjust and unreasonable fees and Ancillary Charges for intrastate calls during the Class Period, Plaintiffs and members of the Class have been damaged.

## TOLLING

26.     On February 16, 2000, a class action complaint was brought against several inmate telephone service providers alleging violations of the FCA based on some of the conduct alleged herein.[19]   Additionally, current and former inmates petitioned the FCC as early as 2003 to address inmate telephone rates.

27.     The court in *Wright* stayed the action on the basis of "primary jurisdiction" and deferred judgment to the FCC, effectively putting such claims on hold pending FCC review and determination.[20]

---

[18] *See Billed Party Preference For Interlata 0+ Calls*, 13 FCC Rcd. 6122, 6156 (FCC Jan. 29, 1998) (finding that inmate telephone rates "must conform to the just and reasonable requirements of Section 201").

[19] *See Wright v. Corrections Corporation of America, et al.*, No. 00-cv-0293-GK (D.D.C.).

[20] *See, e.g., Wright*, No. 00-cv-0293-GK, Dkt. No. 94 (D.D.C. Aug. 22, 2001)(concluding "the FCC is clearly in the best position to resolve the core issues in this case, namely the reasonableness of the rates charged" and noting that "[a]fter the FCC does so ... the Court will have the benefit of the agency's expert findings in addressing them"). The district court initially entered the order as a dismissal and "directed [the parties] to file the appropriate pleadings with the FCC to ensure that the issues raised in this lawsuit are presented to the FCC." *Wright*, No.

28.     As alleged herein, the FCC has made clear that charges for ICS incorporating commissions and other unjustified amounts unrelated to costs are unjust and unreasonable in violation of the FCA.

29.     GTL has been on notice since as early as 2000 that its conduct likely violated the FCA and the claims alleged herein are ripe for disposition.

## CLASS ALLEGATIONS

30.     Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to FED. R. CIV. P. 23.  Plaintiffs seek to represent a class, defined as follows:

> all persons in the United States who, at any time since February 16, 2000, have paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in any state in the United States (the "Class").

---

00-cv-293, Doc. Entry 95 (Aug, 22, 2001).  However, on November 5, 2001, the district court granted the *Wright* "Plaintiffs' Motion to Reconsider and ordered that [*Wright*] be stayed, instead of dismissed, pending the proceedings before the FCC." *Wright*, No. 00-cv-293, Doc. Entry 127 (Oct. 8, 2003) Doc. Entry 105.  Accordingly, the case was reopened and then stayed on November 5, 2001.  *Wright*, No. 00-cv-293, Docket Report.  Thereafter, during the stay in *Wright*, and after the petition had been filed with the FCC, GTL (therein identified as "Global Telecommunications Link") filed a motion to dismiss the claims against it for lack of personal jurisdiction. *See Wright*, ECF No. 134.  Adhering to the stay, the Wright Plaintiffs did not file an opposition to such motion.  Nonetheless, GTL's motion was granted without opinion on July 7, 2004.

31.     Excluded from the Class are any persons who paid to use telephone services provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls in the State of New Jersey.[21]

32.     In addition, Plaintiffs seek to represent state subclasses defined as follows:

> all persons who, at any time since February 15, 2007, have paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in Arkansas (the "Arkansas Subclass");

> all persons who, at any time since June 29, 2007, have paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in California (the "California Subclass");

33.     This action is brought and properly may be maintained as a class action pursuant to the provisions of FED. R. CIV. P. 23(a)(l)-(4) and 23(b)(l), (b)(2), or (b)(3) and satisfies the requirements thereof.

34.     The members of the Class and Subclasses are so numerous that individual joinder of all the members is impracticable. On information and belief, there are many thousands of persons who have been affected by Defendant's conduct.   The precise number of Class and Subclass Members are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records. The members of the Class and Subclasses may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

---

[21] Claims on behalf of a class of individuals concerning calls with inmates in the State of New Jersey are currently pending against GTL and certain of its subsidiaries in existing litigation in the District of New Jersey. *See James v. Global Tel* Link, et al.*, No. 13-cv-4989 (D.N.J.).

35.     Common questions of law and fact exist as to the Class and Subclasses, as required by FED. R. CIV. P. 23(a)(2), and predominate over any questions that affect only individual Class Members within the meaning of FED. R. CIV. P. 23(b)(3). The common questions of law and fact include, but are not limited to, the following:

      a.     whether Defendant has charged unreasonable and unjust intrastate telephone rates and Ancillary Charges;

      b.     whether Defendant has charged telephone rates and Ancillary Charges that unreasonably exceed costs of providing intrastate service;

      c.     whether, through the acts and practices complained of herein, Defendant has violated §201(b) and 276 of the FCA and regulations thereunder;

      d.     whether, through the acts and practices complained of herein, Defendant was unjustly enriched;

      e.     whether through the acts and practices complained of herein, Defendant has knowingly taken advantage of Subclass members in violation of Ark. Code Ann. §4-88-107(a)(8);

      f.     whether, through the acts and practices complained of herein, Defendant has engaged in unconscionable, false, or deceptive act or practices in violation of Ark. Code Ann. §4-88-107(a)(10) ;

      g.     whether, through the acts and practices complained of herein, Defendant has violated California's Business and Professions Code, §§17200, *et seq.;* and

      h.     whether Plaintiffs and the Class and Subclasses have been damaged by Defendant's acts and practices complained of herein, and if so, the measure of those damages and the nature and extent of any other relief that should be granted.

36.     Plaintiffs' claims are typical of the claims of the Class and Subclasses they seek to represent under FED. R. CIV. P. 23(a)(3) because Plaintiffs and the members of the Class and Subclasses have been subjected to the same wrongful practices and have been damaged thereby in the same manner.

37.     Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by FED. R. CIV. P. 23(a)(4).  Plaintiffs are adequate representatives of the Class and Subclasses because they have no interests that are adverse to the interests of the Class and/or Subclasses. Plaintiffs are committed to the vigorous prosecution of this action and to that end Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

38.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and each Class and Subclass Member are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for each Class and/or Subclass Member to individually seek redress for Defendant's wrongful conduct. Even if Class and Subclass Members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

39.     In the alternative, this action is certifiable under the provisions of FED. R. CIV. P. 23(b)(1) because:

    a.    the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass Members that would establish incompatible standards of conduct for Defendant; and

    b.    the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interests of the other Class and

Subclass Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

40.   In the alternative, this action is certifiable under the provisions of FED. R. CIV. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and Subclasses as a whole and necessitating that any such relief be extended to Class and Subclass Members on a mandatory, class wide basis.

41.   Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class action.

**COUNT I**
**VIOLATION OF THE FEDERAL COMMUNICATIONS ACT,**
**47 U.S.C. § 201 AND § 276, ET SEQ.**
**(ON BEHALF OF A NATIONWIDE CLASS)**

42.   Plaintiffs hereby incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

43.   Under§ 201(a) and § 276 of the FCA, Defendant is a common carrier engaged in interstate and intrastate wire communications for the purpose of furnishing such communication services.

44.   Defendant's conduct and the intrastate telephone rates and Ancillary Charges imposed by Defendant, as alleged above, are unjust and unreasonable, and thus, violate § 201 (b) and § 276 of the FCA.

45.   As a direct and proximate result of Defendant's violations of the FCA, Plaintiffs and the Class have been damaged in amounts to be determined at trial.

## COUNT II
### UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE CLASS)

46.     Plaintiffs hereby incorporate by reference paragraphs 1- 41 of this Complaint as if fully set forth herein.

47.     Defendant's conduct as described herein also constitutes Unjust Enrichment, for which Plaintiffs and Class Members are entitled to pursue equitable remedies under the common law.

48.     As a direct and proximate result of Defendant's acts and practices alleged herein, Defendant has been unjustly enriched and has obtained money, earnings, profits, and benefits directly from Plaintiffs and the Class to which Defendant is not otherwise entitled and which it would not have obtained but for unreasonably charging Plaintiffs and Class Members amounts to cover kickbacks and other exorbitant and/or undisclosed fees and charges in order to reap unjust profits.

49.     Defendant's practices were intentional, knowing, malicious, and/or done with the intent to reap significant benefits at the expense of Plaintiffs and the Class. Defendant is not entitled to this enrichment, was prohibited from engaging in the acts and practices that generated this enrichment by § 201(b) of the FCA, and obtained this enrichment to the detriment of Plaintiffs and the Class.

50.     Plaintiffs and the Class reasonably expected that they would only have to pay just and reasonable rates for intrastate calls and would not have to incur other charges that provide no commensurate benefit to them.

51.     Plaintiffs and the Class have suffered, and will continue to suffer, damages as a result of Defendant's unjust retention of proceeds from their acts and practices alleged herein and

are entitled to pursue civil claims for restitution of the amounts charged to unjustly enrich Defendant as alleged above.

52.     Under principles of equity and justice, Defendant should be required to restore the above-described unjust enrichment to Plaintiffs and the Class in amounts to be determined at trial.

**COUNT III**
**VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES**
**ACT, ARK. CODE ANN. §4-88-101 ET. SEQ.**
**(ON BEHALF OF THE ARKANSAS SUBCLASS)**

53.     Jacobs Plaintiffs hereby incorporate by reference paragraphs 1-41 of this Complaint as if fully set forth herein.

54.     Jacobs Plaintiffs bring this claim on their own behalf and on behalf of each member of the Arkansas Subclass against Defendant GTL.

55.     Defendant's actions described in this complaint violate the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*

56.     Defendant violated Section 4-88-107(a)(8) of the ADTPA which prohibits "[k]nowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of: (A)  Physical Infirmity; (B) Ignorance; (C) Illiteracy; (D) Inability to understand the language of the agreement; or  (E) A similar factor." Defendant knowingly took advantage of Jacobs Plaintiffs and the Arkansas Subclass who were unable to protect their interest because (as known to Defendant) Jacobs Plaintiffs and the Arkansas Subclass were a captive market for GTL's services and had no ability to choose a provider who did not pay kickbacks and impose unconscionable charges when making or receiving a call involving an incarcerated person.  As a direct result of Defendant's violation of the ADTPA, Jacobs Plaintiffs

and the Arkansas Subclass have suffered damages, including being forced to fund the kickback payments and charged unconscionable fees.

57.     Defendant violated Section 4-88-107(a)(10) which prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Under the circumstances presented by this case, Defendant engaged in an "unconscionable, false, or deceptive act" by including amounts to fund kickbacks and for exploitive, improper and/or undisclosed fees and charges in the amounts collected from Jacobs Plaintiffs and the Arkansas Subclass Members for intrastate phone services. As a direct result of Defendant's violation of the ADTPA, Plaintiffs and the Arkansas Subclass Members have suffered damage as a result of unwittingly being charged to fund the secret kickback payments and pay for exploitive fees and charges.

58.     Jacobs Plaintiffs and the Arkansas Subclass are entitled to pursue civil claims for relief or recover compensation for their damages in the amount of the unjust and unreasonable charges imposed as a result of the kickbacks and undisclosed, exploitive and/or improper fees and charges as alleged above, and for the costs and reasonable attorney fees incurred with regard to bringing this action pursuant to Ark. Code Ann. § 4-88-113(f).

**COUNT IV**
**VIOLATION OF THE CALIFORNIA**
**BUSINESS & PROFESSIONS CODE § 17200**
**(ON BEHALF OF THE CALIFORNIA SUBCLASS)**

59.     Plaintiffs Caldwell and Foster hereby incorporate by reference paragraphs 1-41 of this Complaint as if they were fully set forth herein.

60.     Plaintiffs Caldwell and Foster bring this section 17200 claim on behalf of themselves and the California Subclass.

61.     Throughout the Class Period, Defendant has regularly conducted business throughout the State of California.

62.     GTL was required to adhere to the requirements of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), when conducting business with Plaintiffs Caldwell and Foster and members of the California Subclass.

63.     The UCL prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice." GTL has engaged in unfair, unlawful or fraudulent business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq.*, in that: (a) Defendant's practices and conduct are immoral, unethical, oppressive and substantially harmful to Plaintiffs and the members of the California Subclass; (b) the justification for Defendant's practices and conduct is outweighed by the gravity of the injury to Plaintiffs and the California Subclass; and (c) Defendant's practices constitute unfair, fraudulent, untrue or misleading actions that exploit and mislead members of the public who are without the ability to choose a provider who did not pay kickbacks, undisclosed amounts and/or who offered services for fair and just charges.

64.     Defendant's unlawful, unfair, and/or fraudulent business practices are described herein and include, without limitation:

- engaging in unlawful acts or practices violating the FCA § 201 and § 276, as detailed above;

- engaging in unfair business acts or practices by, among other things, assessing unjust and unreasonable rates and Ancillary Charges to members of the California Subclass in connection with intrastate telephone calls and providing kickbacks in the form of "site commissions," "concession" payments, and other payments to the California Department of Corrections as detailed above; and

- engaging in unfair business acts or practices by, among other things, knowingly taking advantage of Plaintiffs and Subclass Members who were

> unable to protect their interest because, as known by the Defendant, Plaintiffs and Subclass Members were required to use GTL or its wholly owned subsidiary, Public Communications Services, for calls with inmates incarcerated in California correctional facilities and as a result were without the ability to choose a provider who did not pay kickbacks, or who offered services for fair, just and reasonable charges.

65.     Plaintiff reserves the right to allege other violations of law that constitute other unlawful business acts or practices.

66.     GTL systematically engaged in these unfair and unlawful business practices to the detriment of Plaintiffs Caldwell and Foster and other members of the California Subclass.

67.     The harm caused by these business practices vastly outweighs any legitimate business utility they possibly could have.

68.     Plaintiffs Caldwell and Foster and other members of the California Subclass have been injured and have suffered a monetary loss as a result of GTL's violations of the UCL. They are entitled to restitution in an amount to be determined at trial, and an injunction requiring Defendant to cease its unlawful and unfair business practices as described herein.

69.     As a result of GTL's violations of the UCL, Plaintiffs Caldwell and Foster are also entitled to recover attorneys' fees and costs to be paid by GTL, as provided by Cal. Code of Civil Procedure § 1021.5 and other applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant and in favor of Plaintiffs, the Class and Subclasses, and award the following relief:

a.      Certification of this action as a class action pursuant to FED. R. CIV. P. 23(b)(l), (b)(2) and/or (b)(3) on behalf of the Class and California and Arkansas Subclasses as defined above;

b.      Declaration, judgment, and decree that the conduct alleged herein:

- Constitutes an unreasonable and unlawful act in violation of the FCA;

- • Unjustly enriched Defendant;

- • Violates the Arkansas Deceptive Practices Act, Ark. Code Ann. §4-88-101 *et. seq*; and

- • Violates The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.*

c.   Damages to Plaintiffs, the Class, and Subclasses to the maximum extent allowed under state and federal law;

d.   Costs and disbursements of the action;

e.   Restitution and/or disgorgement of Defendant's ill-gotten gains;

f.   Pre- and post-judgment interest;

g.   Reasonable attorneys' fees; and

h.   Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiffs request a jury trial on all issues so triable.

Date: August 28, 2015                    Respectfully Submitted,

                                         **EVERETT WALES & COMSTOCK**

                                         Amy C. Martin
                                         1944 East Joyce Boulevard
                                         P.O. Box 8370
                                         Fayetteville, AR 72703
                                         Telephone: (479) 443-0292
                                         Facsimile: (479) 443-0564
                                         Email: amy@everettfirm.com

                                         **KESSLER TOPAZ**
                                         **  MELTZER & CHECK, LLP**
                                         Peter A. Muhic (*Pro Hac Vice*)
                                         Edward W. Ciolko (*Pro Hac Vice*)
                                         Donna Siegel Moffa (*Pro Hac Vice*)
                                         Monique Galloway (*Pro Hac Vice*)

280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: pmuhic@ktmc.com
Email: eciolko@ktmc.com
Email: dmoffa@ktmc.com
Email: mgalloway@ktmc.com

**BERGER & MONTAGUE, P.C.**
Daniel Berger (*Pro Hac Vice*)
Peter R. Kahana (*Pro Hac Vice*)
Yechiel Michael Twersky (*Pro Hac Vice*)
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email:danberger@bm.net
Email:pkahana@bm.net
Email:mitwersky@bm.net

**SALTZ, MONGELUZZI,
BARRETT & BENDESKY, P.C.**
Patrick Howard (*Pro Hac Vice*)
Simon B. Paris (*Pro Hac Vice*)
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 496-8282
Facsimile: (215) 496-0999
Email: sparis@smbb.com
Email: phoward@smbb.com

**COHEN MILSTEIN SELLERS &
TOLL, PLLC**
Benjamin D. Brown (*Pro Hac Vice*)
Robert Braun (*Pro Hac Vice*)
Emmy L. Levens (*Pro Hac Vice*)
1100 New York Avenue, NW, Suite 500
Washington, D.C.  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: bbrown@cohenmilstein.com
Email: RBraun@cohenmilstein.com
Email: elevens@cohenmilstein.com

**LAW OFFICE OF SUSAN L. BURKE**
**(BURKE PLLC)**
Susan L. Burke (*Pro Hac Vice*)
1611 Park Avenue
Baltimore, MD  21217
Telephone: (410) 733-5444
Facsimile: (410) 733-5444
Email: sburke@burkepllc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, a true and correct copy of the foregoing document was filed with the Clerk of Court by hand delivery who will cause the foregoing to be filed with the Court's ECF system, which will send notice of such filing to all counsel of record.

_____
Amy C. Martin